UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JENNIFER ENNIS,

    Plaintiff,
vs.

CELEBRITY CRUISES, INC.

    Defendant.
_____/

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, JENNIFER ENNIS ("Plaintiff" or "Mrs. Ennis"), by and through undersigned counsel, hereby sues Defendant, CELEBRITY CRUISES, INC. (hereinafter "CELEBRITY"), and alleges:

## THE PARTIES

1. That at all times material Mrs. Ennis was a citizen and resident of the State of New York, USA.

2. Defendant CELEBRITY is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports within the continental United States, including Miami, Florida and the world. Additionally, Defendant is incorporated outside of the State of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade, Florida.

## JURISDICTION & VENUE

3. This action seeks damages that exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest and attorney fees, and there is complete diversity between the

*Ennis v. Celebrity Cruises, Inc.*
*Case No.:*

Parties hereto. Thus, this Court has diversity subject matter jurisdiction pursuant to *28 USC §1332.*

4. That this Court also has admiralty subject matter initial jurisdiction pursuant to *28 USC §1332* as the alleged negligent conduct and injury occurred on navigable waters and the impact of which had the potential to disrupt maritime commerce.

5. That at all times material the Defendant, CELEBRITY was the owner, operator, or owner *pro hac vice* of the cruise ship *EQUINOX* (hereinafter referred to as, "The Vessel" or "*EQUINOX*").

6. This Court has personal jurisdiction over the Defendant and venue is proper as:

   a. CELEBRITY'S principal place of business is located within Miami-Dade County, Florida; and/or

   b. CELEBRITY conducts substantial business within the State of Florida, including but not limited to operating passenger cruise vessels departing and returning to ports located in Miami, and/or Tampa, Cape Canaveral, Ft. Lauderdale, and Jacksonville;

   c. CELEBRITY issued a ticket contract requiring this personal injury action be filed in this Court thereby subjecting itself to this Court's personal jurisdiction.

7. That venue is proper in this Court under 28 U.S.C. § 1391 as Defendant has its principal place of business in Miami-Dade County, Florida and therefore is deemed to reside here and/or the cruise line ticket at issue also requires that suit be brought in this Court.

8. That all conditions precedent for filing and maintaining this action have been satisfied, waived or do not apply. Plaintiff is no longer in possession of her Cruise Ticket

*Ennis v. Celebrity Cruises, Inc.*
*Case No.:*

Contract, but CELEBRITY does have a copy of it.

## GENERAL ALLEGATIONS

9. That Plaintiff entered into a contract of carriage with the Defendant for the purpose of a cruise aboard the *EQUINOX*. The cruise embarked from Fort Lauderdale on May 29, 2022. While aboard the Vessel, Plaintiff occupied the status of a cruise ship passenger.

10. That Defendant, as common carrier, is engaged in the business of providing vacation cruises to the public aboard various vessels, including the subject Vessel. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the *EQUINOX*.

11. That Defendant, through online, television, radio and print advertisements specifically market their cruises as family friendly vacations with extensive offerings and activities for people of all ages, abilities, and financial stature.

12. The incident which is the subject of this action occurred on or about May 30, 2022, aboard the cruise ship *EQUINOX* while The Vessel was in navigable waters.

13. At the time of the incident, Plaintiff occupied the status of a passenger.

14. At the time of the incident, the Vessel was owned and/or operated and/or maintained by Defendant.

15. On the date alleged above, Plaintiff went to the pool on Deck 14 to sunbathe on a lounge chair. At approximately 1:30 p.m., while sunbathing, Plaintiff got up to rearrange her lounge chair which required her to step onto the running track.

16. As a result of the unreasonably hot deck surface, Plaintiff sustained second degree burns on the bottom of both feet.

17. There were no warnings or caution signs regarding the unreasonably hot surface

of the deck.

18. Defendant knew or should have know that ship decks are frequented by passengers who are barefooted.

19. In addition, hot ship decks have been analyzed and criticized in maritime publications.

20. Upon arriving to the medical center for treatment a medical crewmember by the name of Rose stated that two weeks prior to Plaintiff's injury, another guest had also sustained second degree burns as a result of the unreasonably hot deck surface.

21. As a result of the burns, Plaintiff has undergone a series of treatments due to infections and complications from the burns. Plaintiff's right toe had to be amputated and is currently being monitored for further infections and possibilities of further surgeries.

## COUNT I
## NEGLIGENCE

Plaintiff readopts and alleges paragraphs one (1) through 19 as though fully set forth herein, and further alleges as follows:

22. That at all times material, CELEBRITY owed Plaintiff the duty to exercise reasonable care under the circumstances.

23. Defendant owed Plaintiff the duty of reasonable care under the circumstances for her safety and the duty to warn Plaintiff of all dangers it knew or should have known.

24. Defendant was negligent as it breached its duty by:

   a. Failing to maintain the temperature of the deck's surface;

   b. Failing to monitor the temperature of the deck's surface;

   c. Failing to maintain the deck's surface so that passengers could not come into contact with a heating element or dangerously hot surface;

   d. Failing to outfit the surface with proper material so that the passengers would not come into contact with the dangerously hot deck;

   e. Failing to properly place heating shields;

   f. Failing to have proper procedures to monitor the deck's surface at all times;

   g. Failing to warn passengers of hazard of being burned;

   h. Failing to remedy/correct hazardous conditions following other surface burn incidents in and about the same deck/decking material;

   i. Failing to make the deck reasonably safe for passengers;

   j. Failing to promulgate and/or enforce adequate policies and procedures regarding:

      i. Maintaining the subject area in a safe and cool condition; and/or

      ii. Monitoring the subject area to ensure that it remain safe and at proper temperatures; and/or

      iii. Preventing the subject area decking/decking material from getting too hot with proper deck material; and/or

   k. Failing to provide passengers with a reasonably safe deck to walk/sunbathe upon;

    l. Failing to follow and/or enforce recommendations, policies and procedures for regulating temperatures, placing proper deck material in place to prevent over-heating and/or testing the subject area prior to allowing passengers to the area;

    m. Failing to replace the Decking/Decking material once it became hot and presented an unsafe hazard to passengers, including the Plaintiff;

    n. Failing to place matting on deck which would allow passengers, including Plaintiff, the ability to safely traverse the deck without burning their feet;

    o. Failing to cordon off or block passenger access to the area of the deck which was unreasonably hot;

    p. All other negligence acts and omissions to be learned in discovery.

25. With regard to the alleged unsafe, dangerous or defective condition(s), policy(ies) or procedure(s), the Defendant:

    a. Knew of the foregoing conditions, policies or procedures in advance of the subject incident, but did not correct or warn of such, or

    b. The foregoing conditions, policies or procedure existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have known of such, but did not correct or warn of them, or

    c. Insofar as relates to the foregoing conditions, policies or procedures not created by the Defendant, Defendant's knowledge was or should have been acquired through (i) prior similar incident(s) and/or (ii) through its maintenance, inspection and/or observation(s) of the aforesaid conditions,

   policy(ies) or procedure(s) through shipboard personnel present at times leading up to and/or at the time of the subject incident or who otherwise were charged with such duties and/or (iii) through implementation of policies and/or procedures intended to prevent creation of such, but did not correct or warn of them, or

  d. Insofar as relates to the foregoing conditions, policies or procedures created by the Defendant, by or through a person or entity acting for or on its behalf, knowledge or notice on the part of the Defendant is obviated because Defendant is indirectly / vicariously liable.

26. Defendant had actual notice of the dangerous condition as there had been previous passengers complaining of second degree burns from making contact with the hot deck, including a passenger on the same vessel two weeks prior to Plaintiff's incident.

27. Defendant had further actual notice of prior substantially similar incidents involving passengers receiving burns on vessels in similar weather and deck conditions, including but not limited to:

  a. Passenger Mark Von Gerichten, Celebrity Edge, April 6, 2022.

28. In addition, Defendant should have known of the following substantially similar incidents involving passengers receiving burns on vessels in similar weather and deck conditions as these incidents are discussed in industry related publications, Defendant is known to monitor the news and legal proceedings for adverse cruise incdients as part of its business practices.

  a. Passenger Lyndi Barruq, *Lyndi Barruq v. NCL (Bahamas) Ltd*, Case No. 15-cv-23182, Southern District of Florida,

    b.  Passenger Christian Gibbs, *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, (3d Cir. 2002),

    c.  Passenger James Kruempelstaedter, K*ruempelstaedter v. Sonesta Int'l Hotels Corp.*, 2000 WL 1052005, at *1 (N.D. Ill. July 28, 2000), and

    d.  Passenger Neil Schein, *Schein v. Norwegian Cruise Line Ltd.*, 2009 WL 737114 (S.D. Fla. Mar. 18, 2009).

29.    All or some of the above acts and/omissions by Defendant, its agents, employees and/or crew members, directly caused and/or caused or contributed to the Plaintiff being severely injured.

30.    As a result of Defendant's negligence, Plaintiff suffered bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, medical and nursing care and treatment. These losses are either permanent or continuing in nature.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the form of all compensatory damages allowable under law as well as taxable court costs, prejudgment interest and post judgment interest.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

**DATED: May 29, 2023**

        **BRAIS LAW FIRM**
        *Attorneys for Plaintiff*
        Dadeland Office Park
        9300 S. Dadeland Blvd., Suite 101

*Ennis v. Celebrity Cruises, Inc.*
Case No.:

        Miami, Florida 33156
        Telephone: (305) 416-2901
        Facsimile:  (305) 416-2902

By: */s/ Michelle Y. Gurian*
        KEITH S. BRAIS
        Florida Bar No. 863319
        kbrais@braislaw.com
        MICHELLE Y. GURIAN
        mgurian@braislaw.com
        Florida Bar No.: 100312